UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARK ALLEN STEPHENS,

   Petitioner,

v.              Case No. 09-C-760

MICHAEL THURMER,

   Respondent.

**DECISION AND ORDER DENYING WRIT OF HABEAS CORPUS**

On January 27, 2006, upon acceptance of his plea of guilty to one count of burglary while armed with a dangerous weapon, Petitioner Mark Allen Stephens was sentenced in Waukesha Country Circuit Court to twenty years confinement to be followed by an additional twenty years of extended supervision. Stephens' conviction was affirmed by the Wisconsin Court of Appeals on April 23, 2008, and the Wisconsin Supreme Court denied his petition for review on July 28, 2008. Stephens next petitioned the United States Supreme Court for a writ of certiorari, which was denied on December 1, 2008. On August 5, 2009, Stephens filed a petition for federal habeas relief under 28 U.S.C. § 2254, in which he asserts three claims: (1) The trial court should have suppressed statements he made to the police while in custody after he invoked his right to silence; (2) The prosecutor breached the plea agreement by referencing the Presentence Investigation ("PSI") recommendation that the sentence be made consecutive to another sentence Stephens was already serving; and (3) His trial counsel was constitutionally deficient for failing to object to the prosecutor's referring to the PSI recommendation at sentencing. Because the state court decisions

adjudicating these claims reasonably applied clearly established federal law and reasonably determined the facts in light of the evidence, the petition will be denied.

**I. BACKGROUND**

On August 22, 2002 Stephens entered his neighbor's home and attacked the homeowner when she caught him looking for money. Stephens pulled a knife during the attack, struck the victim, and then fled from her house. Later that day police discovered Stephens hiding under a camper in his mother's yard. (Dkt. 9, Ex. B, App. 101-03; Ex E ¶ 2.) After his arrest Stephens was transported to the police station and handcuffed to a table in an interrogation room. Officer Robert Kraemer read Stephens his Miranda rights, which Stephens acknowledged he understood. Stephens agreed to answer questions. In denying wrongdoing Stephens told Officer Kraemer that he had been at home all day. Detective David Funkhouser then entered the room and took over the interrogation using a more aggressive approach. Officer Kraemer remained in the room while Funkhouser confronted Stephens with facts indicating guilt. Stephens then slammed his hand on the table and and declared "I don't want to talk to you anymore, punk." (Petr's Reply, Dkt. 24 at 1.) Detective Funkhouser twice asked Stephens if he was invoking his rights to representation or to cease questioning. Stephens stated that he would continue to speak but that he was not happy about having to talk with Detective Funkhouser. The interrogation continued. Upon being confronted with the discovery of the knife in his car, Stephens confessed and wrote and signed a statement in question and answer form. (Dkt. 9, Ex E, ¶ 3.)

The County Circuit Court denied Stephens' motion to suppress the statement. At the motion hearing Stephens argued that Detective Funkhouser interrogated him after Stephens invoked his

2

right to silence. (Dkt 9, Ex B, App. 104.) Stephens then entered into a plea agreement with the State whereby Stephens pled guilty to one count of armed burglary and agreed that the charges of kidnaping and substantial battery would be dismissed but read in at sentencing. (Dkt. 9, Ex E, ¶ 4, Ex. X:6-14.) In exchange the State agreed to argue for substantial prison time but take no position on whether the sentence would be concurrent or consecutive.[1]

Based on his conviction, Stephens was facing a maximum term of confinement of 40 years and up to 20 years of extended supervision. The PSI recommended a sentence of 20 years confinement consecutive to the sentence Stephens was then serving to be followed by 20 years of extended supervision. At the January 27, 2006 sentencing hearing the assistant district attorney recommended substantial prison time. He also noted that Stephens was serving a revocation sentence until October 30, 2009 and that is "the sentence to which the presentence writer indicates the recommendation should be consecutive." The prosecutor noted that Stephens would be 67 years old when released if the court adopted the recommendation of the presentence report and ordered 20 years confinement, consecutive. He also argued that the victim deserved a sense of security from a substantial prison term. (Dkt. 9, Ex. E, ¶ 5.) The judge sentenced Stephens to forty years imprisonment, consisting of twenty years each of confinement and extended supervision, to be served consecutively to the sentence he was serving. (*Id.*)

Stephens sought post conviction relief and later appealed his conviction and sentence. The Circuit Court denied Stephens' postconviction motion. The Wisconsin Court of Appeals denied

---

[1] At that time Stephens was already serving a sentence for parole revocation; his projected release date on that sentence was October 30, 2009.

3

his appeal of the postconviction motion decision. The Wisconsin Supreme Court and the United States Supreme Court both declined to review Stephens' case.

## II. ANALYSIS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs review of Stephens's petition. Under that statute, a federal court may not grant habeas relief unless the State court's adjudication of the claim resulted in a decision that was (1) "contrary to or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence produced in the State court proceeding." 28 U.S.C. § 2254(d).

> [A] state court decision involves an unreasonable application of clearly established law if the state court identifies the correct rule and unreasonably applies it to the facts, or if the state court unreasonably extends, or refuses to extend, a rule of law. In determining whether Supreme Court precedent has been applied unreasonably, we do not ask simply whether the state court's application was erroneous, or even clearly erroneous, but whether the decision was "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003).

*Williams v. Bartow*, 481 F.3d 492, 498 (7th Cir. 2007). Moreover, factual determinations by a State court carry a "presumption of correctness" which requires "clear and convincing evidence" to overcome. 28 U.S.C. § 2254(e)(1).

In evaluating an application for habeas corpus pursuant to the judgment of a state court, facts determined by the state court are presumed to be correct. 28 U.S.C. § 2254(e)(1). The applicant is burdened with rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(d).

4

When determining whether a state court decision is contrary to, or involved an unreasonable application of, clearly established federal law, lower federal courts must look exclusively to Supreme Court precedent in reviewing habeas petitioners' claims. *Sweeney v. Parke*, 113 F.3d 716, 718 (7th Cir. 1997). Petitioners "must show that the Supreme Court has 'clearly established' the propositions essential to their position." *Mueller v. Sullivan*, 141 F.3d 1232, 1234 (7th Cir. 1998). A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). The state court decision involves an unreasonable application of such law if "the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407.

**1) Invocation of Right to Silence**

The Supreme Court has held that where an individual in custody invokes his right to remain silent, subsequent statements will be admissible only where the individual's "right to cut off questioning" was "scrupulously honored." *Michigan v. Mosley*, 423 U.S. 96, 104 (1975). Though Stephens presents colorable constitutional issues related to his questioning and right to silence, ultimately this Court is not persuaded that the decisions from Wisconsin courts were contrary to, or an unreasonable application of, clearly established Federal law.

Whether Stephens invoked his *Miranda* rights is a factual finding; thus this Court affords some deference to the Wisconsin Court of Appeals determination. *Bobo v. Kolb,* 969 F.2d 391, 397 (7th Cir. 1992). Here the Wisconsin Court of Appeals held that:

5

> Stephens did not make a clear articulation that he wanted to terminate the interrogation and the detective was not required to immediately walk away. In asking two clarifying questions – whether Stephens was invoking his right to representation and whether Stephens was invoking his right to remain silent – Detective Funkhouser was doing good police work in an attempt to determine whether Stephens was invoking a right . . . Stephens had been fully advised of his *Miranda* rights and when asked to clarify if he wanted to terminate the interrogation, he indicated he did not.

*State v. Stephens*, No. 2006AP2809-CR, 2008 WI App 83, 312 Wis. 2d 479, 751 N.W.2d 902 (Table), 2008 WL 1808566 (Wis. Ct. App. April 23, 2008) (unpublished decision). The court reasoned that the clarifying questions were appropriate given that Stephens directed his words "I don't want to talk to you, punk" to Detective Funkhouser. *Id.* The declaration that a suspect does not wish to speak to a specific officer is not the invocation of the right to remain silent. *Id.* (citing *State v. Owen*, 551 N.W.2d 50 (Wis. Ct. App. 1996)). Wisconsin courts apply the same rule for an invocation of the right to silence and for an invocation of the right to counsel: a suspect must unambiguously assert the rights. *State v. Ross,* 552 N.W.2d 428, 431 (Wis. Ct. App. 1996) (applying the "clear articulation" of right to counsel from *Davis v. U.S.,* 512 U.S. 452 (1994) to the context of the right to silence). Stephens argues that the federal circuits are split over whether the "clear articulation" rule should apply to the right to silence in the same manner that it applies to right to counsel. (Dkt. 18 at 8.) Regardless of the circuit split, the United States Supreme Court has not ruled on the issue. Accordingly, the Wisconsin Court of Appeals factual determination regarding Stephens' statement "I don't want to talk to you, punk" is not "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).

**2) Breach of Plea Agreement**

Breach of a plea agreement may implicate a federal, constitutional issue, based on a defendant's right to due process and the requirement that his waiver of a right to trial be made

voluntarily. *Santobello v. New York*, 404 U.S. 257 (1971). Stephens makes three arguments in support of his position that the prosecutor breached the plea agreement. First, Stephens contends that the State should have affirmatively stated "the State is not taking a position on whether the sentence should be concurrent or consecutive," rather than simply standing silent. Second, Stephens suggests that the State improperly referenced the victim's pre-sentencing statement. Finally, Stephens alleges that the State's reference to the PSI author's recommendation of a consecutive sentence was improper. The Wisconsin Court of Appeals did not find merit in any of these arguments and that finding is not contrary to, or an unreasonable application of, clearly established Federal law. Each contention is addressed in detail below.

Under the plea agreement, the prosecutor agreed to take no position as to whether any sentence of imprisonment should be concurrent or consecutive. In exchange Stephens agreed that the State would be allowed to argue for "substantial" prison time. On the plea date, while on the record, the prosecutor correctly recited and agreed to the terms of the deal. Stephens' argument focuses on the fact that the prosecutor did not re-state all the terms of the plea agreement on the date of sentencing, which occurred six weeks after the plea date. (Dkt. 18 at 19.) In denying Stephens' postconviction motion the Circuit Court noted that the plea agreement was not that the prosecution would <u>notify</u> the sentencing court that it took no position as to a concurrent or consecutive sentence, but only that it would not <u>take</u> a position. Therefore the Circuit Court found that there was no breach of the plea agreement, "technical or otherwise . . . . And, if I'm wrong about that I also find there is no substantial and material breach." (Answer, Ex. B at App. 326:3-5.) The Wisconsin Court of Appeals affirmed, also finding a lack of substantial and material breach. *State v. Stephens*, No. 2006AP2809-CR, 2008 WI App 83, 312 Wis. 2d 479, 751 N.W.2d 902 (Table), 2008 WL 1808566

(Wis. Ct. App. April 23, 2008) (unpublished decision). The plea agreement did not call for the prosecution to state it was taking no position, rather it called for the prosecutor to refrain from actually taking a position. "In the absence of any indication that the parties expected the State to either remain silent or recommend concurrent sentences, we are reluctant to engraft these conditions into a fully integrated plea agreement." *State v. Bowers,* 696 N.W.2d 255, 261-62 (Wis. Ct. App. 2005). "While the government must be held to the promises it made, it will not be bound to those it did not make. To do otherwise is to strip the bargaining process itself of meaning and content." *Id.* at 546-547 (quoting *United States v. Fentress,* 792 F.2d 461, 464-65 (4th Cir. 1986)). Accordingly the Court of Appeals reasonably applied clearly established Federal law.

Second, Stephens suggests that the State improperly referenced the victim's pre-sentencing statement. In Wisconsin a victim is afforded an opportunity to address the court, orally or in writing, prior to the judge's sentencing determination. At sentencing the prosecutor referenced the victim's concern that Stephens may harm her in the future. The prosecutor asked the judge to consider the victim's safety. (Dkt. 9, Ex. Y:23.) Stephens now argues that somehow the victim's statement, which referenced forty years in prison, indicated the victim's desire for a consecutive sentence. It may have, but the fact of the matter is that the prosecution never made that connection. Under the plea agreement the prosecution was allowed to argue for a substantial prison sentence; asking the court to consider the victim's safety simply supported the argument for substantial prison and did not relate to the concurrent/consecutive issue. The Wisconsin Court of Appeals rejected Stephens' position, noting that the "sentencing court is permitted to consider the comments and wishes of the victim" and holding that "the prosecution's emphasis on the victim's wishes did not make an end run around the plea agreement." *State v. Stephens*, No. 2006AP2809-CR, 2008 WI App 83, 312

8

Wis. 2d 479, 751 N.W.2d 902 (Table), 2008 WL 1808566 (Wis. Ct. App. April 23, 2008) (unpublished decision). Thus, the Wisconsin Court of Appeals reasonably applied *Santobello v. New York*, 404 U.S. 257 (1971), in holding that the State did not breach the plea agreement.

Stephens last contention, that the prosecutor improperly referenced the PSI, is likewise without merit. This Court has reviewed the transcript of the October 20, 2006 postconviction motion hearing, where the trial court considered petitioner's claim that the prosecutor breached the plea agreement at sentencing by referring to the addendum to the PSI, in which the writer recommended that petitioner's sentence be consecutive to the term of imprisonment he was serving at the time for a prior offense. The judge presiding over that postconviction motion hearing, who was not the sentencing judge, considered the postconviction motion and observed that nothing in the plea agreement prohibited the prosecution from arguing for a substantial sentence. (Dkt. 9, Ex. B at App. 318-319.) That court noted that the prosecutor made the following comments: "Mr. Stephens is currently, Judge, serving time, after having been revoked from parole, until October 30th, I believe, of 2009. That's the sentence to which the pre-sentence writer indicates that the recommendation should be consecutive." (*Id.*, Ex. B at App. 321:14-19.) The Circuit Court considered this as a proper clarification or explanation of the PSI by the prosecutor, as it was not clear to which prior sentence the report was referring, and the court believed information about petitioner's current term of confinement was "essential information to understand the actual impact of any sentence." (*Id.*, Ex. B at App. 322:14-15.) The Wisconsin Court of Appeals agreed, holding that this first reference to the PSI was merely to explain the PSI to the sentencing judge. (*Id.*, Ex. E, ¶¶ 11, 13.) The Court of Appeals found that the prosecutor did not breach the plea agreement by referencing the PSI, and, in the alternative, any such breaches were only technical. The prosecutor later referenced the PSI

9

again, stating that, if the sentencing court adopted the PSI recommendation, Stephens would be released from prison in 2029 when he was 67 years old. (*Id.*, Ex. 7:25.) The Wisconsin Court of Appeals found that this statement was factual only and did not advocate for or against a consecutive sentence, affording Stephens the benefit of the plea agreement. (*Id.*, Ex E, ¶ 16.) This Court grants deference to the Wisconsin Court of Appeals on its factual finding that the prosecutor was not arguing for or against a consecutive sentence. 28 U.S.C. § 2254(e)(1). Further, the reference did not materially or substantially deprive Stephens of the benefit of the plea agreement. A breach is only "material and substantial" if it defeats the benefit for which the accused bargained. *Hartjes v. Endicott,* 456 F.3d 786, 791 (7th Cir. 2006) (quoting *State v. Naydihor,* 678 N.W.2d 220, 225-26 (Wis. Ct. App. 2004)). Here the Wisconsin Court of Appeals, finding no breach of the plea agreement, reasonably applied federal law. Reading the challenged statements in the context of the sentencing argument made by the prosecutor, this court agrees. There was no breach of the plea agreement.

### 3) Ineffective Assistance of Counsel

Ineffective assistance of counsel, if properly established, may be a constitutional ground for habeas relief under *Strickland v. Washington*, 466 U.S. 668 (1984). Stephens contends that his defense counsel failed to object at the sentencing hearing when the prosecutor "breached" the plea agreement. Certainly Stephens' attorney cannot be ineffective "for not objecting to a technical breach or to none at all." *State v. Quarzenski,* 739 N.W.2d 844 (citing *State v. Howard*, 630 N.W.2d 244 (Wis. Ct. App. 2001); *see also State v. Sprang*, 683 N.W.2d 522 (Wis. Ct. App. 2004) ("[w]here the attorney is guilty of deficient performance in failing to object to a substantial and material breach of the plea agreement, the defense is automatically prejudiced."). Here, since this Court has

10

concluded that the Court of Appeals reasonably applied Federal law in finding no breach of the plea agreement. It follows that the Court of Appeals also reasonably applied Federal law in finding no ineffective assistance of counsel. Put simply, without a breach of the plea agreement, Stephens' counsel had nothing to object to.

### III. CERTIFICATE OF APPEALABILITY

Because the Court is entering a "final order adverse to the applicant," it must address whether it will issue or deny a certificate of appealability. Rule 11 of the Rules Governing § 2254 Cases. The certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is whether reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983). If the court issues a certificate of appealability it must indicate on which specific issue or issues the petitioner has satisfied the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3).

Here, I conclude that the petitioner has failed to make a substantial showing of a denial of a constitutional right as to any of his claims. The record does not support finding that a reasonable jurist would find debatable whether the Wisconsin courts unreasonably determined the facts in light of the evidence presented or unreasonably applied clearly established federal law. Accordingly, the certificate of appealability will be denied.

**THEREFORE, IT IS ORDERED** that the petition is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

The Clerk is instructed to enter judgment of dismissal in favor of the Respondent.

Dated this      25th       day of August, 2010.


                                                 s/ William C. Griesbach
                                                 William C. Griesbach
                                                 United States District Judge